FILED

2016 Aug-17  AM 11:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

| | |
|---|---|
| **TINA DARLENE GRACE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )          **CASE NO.  6:15-CV-0447-SLB** |
| | ) |
| **CAROLYN  W.  COLVIN,  Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

Plaintiff Tina Darlene Grace brings this action pursuant to 42 U.S.C. § 405(g),[1] seeking review of the Commissioner of Social Security's final decision denying her application for supplemental security income ["SSI"].  Upon review of the record, the relevant law, and the arguments of counsel, the court is of the opinion that the Commissioner's decision is due to be affirmed.

**I.  PROCEDURAL HISTORY**

Ms. Grace initially filed her application for SSI on November 30, 2011.  (Doc. 7-3 at R.22; doc. 7-6 at R.169-77.)[2]  The application was denied initially.  (Doc. 7-5 at R.86-88.)  Thereafter, she requested a hearing before an Administrative Law Judge ["ALJ"].  (*Id.* at

---

[1]The judicial review provision for a disability insurance benefits claims, 42 U.S.C. § 405(g), also applies to claims for SSI, *see*  42 U.S.C. § 1383(c)(3).

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.  Reference to a page numbers in the Commissioner's record, ["R.___"], refers to the page number assigned to the record by the Commissioner.

R.92-93.)  The hearing was held on March 6, 2013.  (Doc. 7-3 at R.48.)  After the hearing, the ALJ found that Ms. Grace was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (*Id*. at R.37.)  In light of this finding, the ALJ found Ms. Grace had not been disabled at any time between the date she filed her application and the date he denied her application.  (*Id.*)

Ms. Grace then asked the Appeals Council to review the ALJ's decision.  (*Id*. at R.10.)  On January 23, 2015, the Appeals Council "found no reason under [its] rules to review the [ALJ's] decision.  Therefore, [it] denied [Ms. Grace's] request for review," and the ALJ's decision became the final decision of the Commissioner.  (*Id*. at R.1.)

The present appeal was filed on March 16, 2015.  (Doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  It "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d

1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for SSI. *See* 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for SSI benefits] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The specific steps in the evaluation process are as follows:

### 1.  Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[3] 20 C.F.R. § 416.972.  If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience.  20 C.F.R. § 416.920(b). "Under [this] first step, the claimant has the burden to show that she is not currently engaged

---

[3]The regulation provides:

Substantial gainful activity is work activity that is both substantial and gainful:

(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 416.972.

in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[4]

The ALJ found that Ms. Grace had not engaged in substantial gainful activity since the application date, November 30, 2011.  (Doc. 7-3 at R.24.)

### 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience."  20 C.F.R. § 416.920(c).  "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

---

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a).  A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 416.923.  A claimant has the burden to show that she has a severe physical or mental impairment or combination of impairments.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Grace had "the following severe impairments:  chronic obstructive pulmonary disease (COPD), anxiety disorder, and substance abuse," and "[t]he claimant would still have limitations from some of her impairments if there was no controlled substance abuse, albeit at a lesser degree of severity."  (Doc. 7-3 at R.24.)  He also found that Ms. Grace's "self-reported PTSD and depression," her hearing loss in her left ear, and her "ongoing complaints of back pain, neck pain, fibromyalgia, and pain from scoliosis" were non-severe impairments.

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement[5] and whether it meets or is medically equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing

---

[5]"Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."  20 C.F.R. § 416.909.

substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings].  If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of her age, education, and work experience.  20 C.F.R. § 416.920(d).  The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Grace did not have an impairment or combination of impairments that met or medically equaled a Listing.  (Doc. 7-3 at R.26.)

**4.  Residual Functional Capacity and Past Relevant Work**

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and mental demands of [the claimant's] past relevant work."  20 C.F.R. § 416.960(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it.  20 C.F.R. § 416.960(b)(1).  If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled.  20 C.F.R. § 416.920(e).  The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found:

7

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b)[6] except she would require non-complex work task[s] that consist of 1-2 step procedures and no more than simple workplace judgment.  She should have no contact with the general public and no more than occasional contact with co-workers.

(Doc. 7-3 at R.27 [footnote added].)  Ms. Grace "was born [in] July . . . 1971 and was 40 years old . . . on the date the application was filed," and she had at least a high school education and could communicate in English.  (*Id*. at R.36.)  The ALJ found that Ms. Grace had no past relevant work.  (*Id*.)

### 5.  Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 416.920(c)(1).   The regulations provide:

> If we find that your [RFC] is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity

---

[6]Section 416.967(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  . . .

20 C.F.R. § 416.967(b).

assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 416.960(c)(1).

Because the ALJ found Ms. Grace could not perform a full range of light work, he consulted a Vocational Expert [VE] to determine whether any jobs exist in the national economy that Ms. Grace, considering her RFC and other vocational factors, could perform. The VE testified that an individual with Ms. Grace's limitations and vocational factors could perform the "light" jobs of garment sorter, inspector and hand packager, and cloth folder. (Doc. 7-3 at R.70.)   Based on this testimony, the ALJ found that Ms. Grace could perform other work, and, therefore, had not been under a disability since November 30, 2011.  (*Id.* at R.37.)

## B.  ISSUE ON APPEAL

Ms. Grace contends that the ALJ erred by failing to find her fibromyalgia was medically equal to Listing 14.09D for inflammatory arthritis.  Fibromyalgia is not a listed impairment; therefore, a claimant can only show that her impairment of fibromyalgia medically equals a Listing.  *See* 20 C.F.R. § 416.926(b)(2)("If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical

9

significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing."). The claimant has the burden to prove medical equivalence. *Bellew v. Acting Com'r of Soc. Sec.*, 605 Fed. Appx. 917, 922 (11th Cir. 2015)(citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).

"An impairment cannot meet the Listing criteria based only on a diagnosis." *Id*. (citing *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); 20 C.F.R. § 416.925(d)). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)(emphasis in original). Also, "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*. at 531.

The court notes that the ALJ found that Ms. Grace's fibromyalgia was not a severe impairment. He stated:

> The claimant has made ongoing complaints of back pain, neck pain, fibromyalgia, and pain from scoliosis. However, the claimant has not alleged and the records do not show any substantial limitations due to these conditions. The medical record indicates that the claimant has been treated for the above listed conditions. She is under pain management for her pain. Throughout 2010, at each presentation to Dr. Miller, the claimant reported that her medications were helping. Moreover, she reported that with the medications, she could perform her activities of daily living. At one presentation, she reported that the medications brought her pain down to a level 4 out of 10. These presentations indicate that the claimant's reported pain and fibromyalgia is well controlled with her medication regimen [Exhibit 3F]. The claimant has alleged no ongoing or continuous restrictions due to these conditions. Based on the claimant's report to her treating physician,

these conditions constitute at most only a slight abnormality that cannot
reasonably be expected to produce more than minimal, if any, work-related
limitations.  These impairments are therefore considered to be nonsevere (20
C.F.R. . . . 416.921).

(Doc. 7-3 at R.25.)  The Medical Expert, James Anderson, M.D., testified that, based on

consideration of Ms. Grace's medical records, her "history of generalized pain syndrome

[and] clinical diagnosis of fibromyalgia . . . would be part of a drug seeking behavior

associated with longstanding substance abuse."  (Doc. 7-3 at R.66.)  The ALJ gave great

weight to Dr. Anderson's assessment and opinion.  (*Id*. at R.36.)  These findings are

supported by substantial evidence and, together, effectively exclude any finding that Ms.

Grace's fibromyalgia and/or chronic pain medically equaled a Listing-level impairment.

Nevertheless, Ms. Grace contends that the ALJ erred in failing to find that her

fibromyalgia equaled Listing 14.09D.  (Doc. 11 at R.15.)  The court disagrees because the

ALJ found her fibromyalgia was not a severe impairment and this finding is supported by

substantial evidence.   However, even assuming Ms. Grace has a severe impairment of

fibromyalgia, she has not shown that her impairment medically equals Listing 14.09D for

inflammatory arthritis.

To equal Listing 14.09, "the claimant would have to demonstrate that her

[fibromyalgia] had caused . . . repeated inflammation with marked limitations in the

claimant's functional domains."  *James v. Colvin*, No. 2:13-CV-02148-KOB, 2015 WL

661175, at *8 (N.D. Ala. Feb. 17, 2015).  The regulations provide:

a.  General.  The spectrum of inflammatory arthritis includes a vast array of
disorders that differ in cause, course, and outcome.  Clinically, inflammation

of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness.  The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements.  However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation.

. . .

d.  Documentation of inflammatory arthritis.  Generally, but not always, the diagnosis of inflammatory arthritis is based on the clinical features and serologic findings described in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

e.  How we evaluate inflammatory arthritis under the listings.

> . . .

> (ii)  Listing-level severity is shown in 14.09B, 14.09C2, and ***14.09D*** by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs.  Extra-articular impairments may also meet listings in other body systems.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.00D6 (emphasis added).  Ms. Grace contends she

meets the Listing for inflammatory arthritis, which requires proof of a medical condition:

***As described in 14.00D6***.  With:

. . .

D.  Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1.  Limitation of activities of daily living.

2.  Limitation in maintaining social functioning.

12

>3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

*Id*. § 14.09D(emphasis added).

In discussing whether Ms. Grace's "mental impairments, considered singly and in combination . . . would . . . meet or medically equal the criteria of listings 12.04, 12.06, and 12.09," Listings that also require a finding of a marked limitation in the functional domains, the ALJ found:

>In social functioning, the claimant has ***moderate*** difficulties. The claimant reported that she becomes anxious in crowds. However, she does go grocery shopping as needed and does shop for personal items. The claimant visits with her brother several times a week. These activities indicate that the claimant can interact with others, communicate, and participate in social activities. There is no indication that the claimant has isolated herself from others or that she has anything more than a moderate restriction in social activities.

(Doc. 7-3 at R.26 [emphasis added; citation omitted].)  Ms. Grace argues on appeal that the ALJ "seem[ed] to concede the claimant's marked limitations in maintaining social functioning" based on the limitations included in her RFC regarding contact with the public

and with co-workers.[7]  (*See* doc. 11 at 17-18.)  The court finds that the ALJ did not implicitly find Ms. Grace had a marked limitation in her social functioning.

Specifically and explicitly, the ALJ found that "the claimant has moderate difficulties" in social functioning."   (Doc. 7-3 at R.27).  In support of this finding, he gave "some weight" to the reviewing psychiatrist, Dr. Robert Estock, noting that Dr. Estock had "assessed only moderate restrictions of . . . social functioning," and that "[t]his assessment is consistent with the later evidence received at the hearing level and the [ALJ's] determination."[8]   (*Id*. at R.35 [citing doc. 7-4 at R.74-85].)   Also, the examining psychologist, Robert L. Bare, Ph.D., found Ms. Grace had a GAF of 55, which indicates

---

[7]In her Brief, Ms. Grace states:

[O]n September 17, 2013, [after the ALJ's decision] a consultative psychological report by Alan D. Blotcky, Ph.D., indicates that the claimant has marked impairments in the following areas:  being able to respond appropriately to supervisors; being able to respond appropriately to customers or other members of the general public; being able to respond to customary work pressures; being able to maintain attention, concentration or pace for periods of at least two hours; being able to maintain social functioning; and being able to maintain activities of daily living.  The claimant submitted this report to the Appeals Council but the [Appeals Council] ruled that this information is about a later time.

(Doc. 11 at 17.)  Ms. Grace does not challenge the Appeals Council's ruling on appeal.

[8]Dr. Estock noted that Ms. Grace's "functioning appears quite well.  [Her activities of daily living] "also support this as they are highly functional, which include handling money, shopping in stores, reading, and spending time with others."  (Doc. 7-4 at R.77.)

moderate symptoms or impairment.[9]  (Doc. 7-11 at R.434.)  The ALJ gave Dr. Bare's

opinion "considerable weight."  (Doc. 7-3 at R.35.)

> With regard to the limitations in her RFC, the ALJ stated:
>
> While the claimant may have some mental symptoms, the records simply do
> not establish the degree of severity as alleged by the claimant.  A limitation to
> unskilled work, with other appropriate restrictions, including non-complex
> work tasks, no contact with the general public, and only occasional contact
> with co-workers fully considers the claimant's complaints of anxiety and
> depression with difficulty in concentration.  Moreover, a restriction to no more
> than simple workplace judgment as well as the non-complex work tasks
> accounts for any associated memory loss due to her mental impairments.

(*Id.* at R.34.)

Based on the record, the court rejects Ms. Grace's contention that the ALJ's

restriction on her ability to work with and around other people to be equivalent to a finding

that she had a ***marked*** restriction in her social functioning.  The ALJ's Decision clearly and

unequivocally finds her social functioning was no more than moderately limited and this

finding is supported by substantial evidence.

Therefore, even if the court assumes that Ms. Grace had repeated manifestations of

fibromyalgia that are medically equal to inflammatory arthritis and that she suffered two or

more of the listed constitutional symptoms at a severe level, the court would nonetheless find

---

[9]"According to the DSM-IV, GAF [Global Assessment of Functioning] is a standard
measurement of an individual's overall functioning 'with respect only to psychological,
social, and occupational functioning' using a 1 to 100 point scale. . . . [A] score between 51
and 60 indicates moderate symptoms or impairments . . . ."  *Kent v. Acting Commissioner
of the Social Security Administration*, No. 15-15059, 2016 WL 3159582, at *2 (11th Cir.
June 7, 2016)(quoting AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL
MANUAL OF MENTAL DISORDERS 30-32 (4th ed. 2000).

that Ms. Grace's fibromyalgia did not equal Listing 14.09D because she failed to prove that she had a marked limitation in any of the functional areas, including maintaining social functioning.

## **CONCLUSION**

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 17th day of August, 2016.


SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE